IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| James M. Broten, ) | |
| ) | Civil Action No. 8:04-1413-RBH-BHH |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Charleston County Detention Center; J. ) | |
| Al Cannon, Jr., Esq., Sheriff; Roland H. ) | |
| Windham, Jr., Charleston County ) | |
| Administrator; Chief Deputy K. P. ) | |
| Novak, Chief Jailor; United States ) | |
| Marshals Service; CCDC Officer ) | |
| Forester; CCDC Officer Tipton; ) | |
| Unknown CCDC "Tag" team officers; ) | |
| Unknown CCDC Nurse " Betty",and ) | |
| John Does, unknown CCDC officers, ) | |
| ) | |
| Defendants. ) | |

The plaintiff, a former federal pretrial detainee proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on April 12, 2004, seeking damages for alleged civil rights violations. Named as defendants were the Charleston County Detention Center ("CCDC"); J. Al Cannon, Jr., the sheriff of Charleston County; K.P. Novak, the chief deputy of Charleston County; Roland H. Windham, Jr., Charleston County Administrator; the United

States Marshals Service ("USMS"); and D. Lynes, Interim Chief, USMS.[1] On July 16, 2004, this court granted the plaintiff's motion to amend his complaint. By virtue of this order, CCDC Officer Forrester, CCDC Officer Tipton, and unknown CCDC Nurse Betty were added as party defendants.

On February 18, 2005, defendants CCDC, Cannon, Windham and Novak filed a motion for summary judgment. On February 25, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was informed of the summary judgment procedure and the possible consequences if he failed to respond to the motion. On March 3, 2005, the plaintiff filed a response in opposition to this motion for summary judgment.

On May 25, 2005, the unknown CCDC Nurse Betty filed a motion to dismiss or, in the alternative, for summary judgment. On May 27, 2005, a *Roseboro* order was sent to the plaintiff informing him of the possible consequences if he failed to adequately respond. On May 27, 2005, defendants CCDC Officers Forrester and Tipton filed a motion for summary judgment. Again, a *Roseboro* order was sent to the plaintiff.

On July 5, 2005, this court recommended that the case be dismissed for lack of prosecution, noting that two prior mail communications addressed to the plaintiff had been returned for lack of a forwarding address. On July 8, 2005, the plaintiff filed a motion requesting an extension of time in which to file objections to the report and recommendation. The motion was granted on July 11, 2005. On August 15, 2005, the plaintiff filed a response in opposition to the motion by defendants Tipton and Forrester for summary judgment. By order dated September 1, 2005, U.S. District Judge R. Bryan Harwell rejected this court's recommendation and recommitted the matter to this court for "further handling and reconsideration of the pending motions." Judge Harwell specifically directed this court to issue a report and recommendation analyzing the summary judgment

---

[1] By order dated March 31, 2005, the district court adopted this court's report and recommendation and granted the motion of defendants USMS and Lynes for summary judgment.

2

motion of defendants CCDC, Cannon, Windham and Novak. On September 8, 2005, this court issued a Report and Recommendation recommending that the summary judgment motion of defendants CCDC, Cannon, Windham and Novak be granted.

This report and recommendation will address defendant Nurse Betty's motion to dismiss or in the alternative for summary judgment, filed May 25, 2005, and CCDC Officers Tipton and Forrester's motion for summary judgment, filed May 27, 2005.

## **APPLICABLE LAW**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support his claim and would entitle him to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a

reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## **ANALYSIS**

The plaintiff is currently a federal prisoner confined to the Federal Correctional Institution - Elkton (FCI-Elkton). At the time he filed his complaint, the plaintiff was a pretrial detainee confined to the Charleston County Detention Center (CCDC). In his complaint, the plaintiff alleges that the conditions of confinement at CCDC were substandard and violative

of his constitutional rights. The plaintiff asserts that he is of Jewish faith. His complaint sets forth a laundry list of allegedly unconstitutional conditions, including the unavailability of kosher foods, the absence of the Jewish book of prayer and the prohibition of other Jewish publications, and no provision for visits from rabbis for Jewish prisoners. He further alleges that no correspondence courses are allowed at CCDC; no legal publications may be received by the inmates through the mail; free access to the federal public defender's office is curtailed; recreation time in the plaintiff's unit is limited; no Alcoholics Anonymous or Narcotics Anonymous meetings are allowed in CCDC; sales tax is improperly charged on canteen items; there are no laundry facilities for personal apparel, and CCDC staff does not provide written responses to grievances.[2] The plaintiff requests the court correct all of his complaints. He also seeks $250,000 in actual damages, plus punitive damages.

In his motion to add defendants, which resulted in the addition of defendants Forrester, Tipton and Nurse Betty to this action, the plaintiff alleged that he had been on administrative lock-down for a period of two days, that certain legal materials had been removed from his cell, that Tylenol pills were removed from his cell and that he was administratively punished for possessing the pills, and that he has been refused the ability to make photocopies and has not been allowed to see a psychiatrist for anxiety attacks (pl. motion, June 16, 2004).

Initially, the court notes that the plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C. §1997e(a). The revised PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility

---

[2]This list represents only a small portion of the violations claimed by the plaintiff. His allegations are listed individually on five pages of single spaced, handwritten documents.

5

> until such administrative remedies as are available are exhausted.

Recently, in *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. The plaintiff here attached, as part of his complaint, a record of his grievance process (Ex. B). On this form, in response to Question C (2), he states that he filed a grievance, and in response to Question D, he indicates that he has received a verbal determination regarding this matter. However, the plaintiff did not answer the remaining questions. There is no documentary evidence that the plaintiff has followed the grievance procedure available to prisoners in South Carolina as set forth in *Al-Shabazz v. State of South Carolina*, 527 S.E.2d 742 (2000), including appeal of the CCDC determination to the South Carolina Administrative Law Division ("ALJD"). Accordingly, the plaintiff has failed to establish that he has exhausted his administrative remedies pursuant to §1997e(a).

In any event, the court will address the merits. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* at 991, *citing Bell v. Wolfish*, 441 U.S. at 535. For the punishment, *i.e.*, the alleged unconstitutional condition of confinement, to be sufficiently serious, it must fail to meet the minimal civilized measure of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 341 (1981). Absent a showing of expressed intent to punish on the part of the correctional

officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it is excessive in relation to that purpose. *Bell*, 441 U.S. at 538-540; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Prison officials are afforded deference in determining what is reasonably related to a legitimate government objective. Indeed, plaintiffs bear the burden of producing, even at the summary judgment stage, "specific non-conclusory factual allegations" of an improper motive. *Crawford-El v. Britton*, 523 U.S. 574 (1998).

The plaintiff has sued two individual CCDC employees, Officers Forrester and Tipton, together with unknown "Nurse Betty". There are no specific claims in the original complaint[3] against these individuals, and all three have moved for summary judgment. The plaintiff complains that CCDC does not provide kosher meals and that kosher items are not available in the canteen. CCDC is not required to serve a special diet if inmates can voluntarily refrain from eating the inedible food and maintain an adequate diet. *See Abernathy v. Cunningham*, 393 F.2d 775, 778 (4th Cir. 1968). The plaintiff has not shown that he was injured in any way by an inadequate diet. Moreover, the affidavit of Sabrina Crawford, the Director of Support Services at CCDC, indicates that kosher meals are served at CCDC and that kosher items are available at the canteen (Crawford aff. at ¶ 3). In addition, Ms. Crawford also indicates that CCDC provides a pork-free menu to all inmates (Crawford aff. at ¶ 5).

The plaintiff also alleges that CCDC provides Christian bibles to inmates but does not provide Jewish prayer books to Jewish inmates. The plaintiff does not allege that he was denied any particular religious book. As the affidavit of Ms. Crawford explains, the

---

[3]In his motion to add the defendants, the plaintiff asks only for injunctive relief, *i.e.*, asks that the court issue an injunction to the United States Marshals Service to remove the plaintiff from the CCDC. Because the plaintiff has since been transferred from the CCDC, and, indeed, is now serving his sentence in a federal correctional institution, this request is moot. However, out of an abundance of caution, and because of the somewhat complicated procedural history of this case, the court will address the original allegations of the complaint regarding the conditions of his confinement as they might relate to the remaining defendants.

CCDC provides "any authorized religious text to inmates upon their request" (Crawford aff. at ¶ 4). The plaintiff has failed to demonstrate any constitutional violation.

The plaintiff also contends that pretrial detainees do not have access to a law library. This claim is governed by the First Amendment right of access to the courts. To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The plaintiff here has made no such showing. Moreover, at all pertinent times during his pretrial detention, the plaintiff was represented by counsel. It has been held that the assistance of counsel satisfies the requirement of access to the courts. *See United States v. Chatman*, 584 F.2d 1358 (4th Cir. 1978).

The plaintiff also complains that telephone service for inmates during his incarceration was too expensive and that international calls were not allowed. According to the affidavit of Ms. Crawford, all inmates are allowed access to telephone service, but all calls must be collect. International calls are allowed, but must be prepaid. "Not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill*, 979 F.2d at 991. The constitution does not require prisoners to be given free and unlimited access to phone service. Accordingly, the plaintiff has failed to state a claim for a constitutional violation.

The plaintiff also complains about the grievance procedure at CCDC and asks that the court order the defendants to institute a new grievance procedure. This request for equitable relief is moot inasmuch as the plaintiff is no longer being detained at CCDC. Moreover, the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state. *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994).

The other complaints raised by the plaintiff are, quite simply, either not supported by the record or not of constitutional proportion. There is no evidence that the

plaintiff was injured in any way by the conditions which he alleges to be substandard. Additionally, there is no evidence that the plaintiff was injured in any way by the alleged actions of the defendants Forrester and Tipton. Moreover, as noted above, the plaintiff is no longer housed at CCDC and so his requests for injunctive relief are moot. His statement that he will have to return to CCDC after he finishes his case in New York and "will be enduring the same conditions when [he] get[s] back" is conclusory and not ripe for consideration. Accordingly, as to defendants Forrester and Tipton, summary judgment is appropriate.

With regard to the defendant Nurse Betty's motion to dismiss or for summary judgment, this court notes that there are no specific allegations in the complaint as to any actions of Nurse Betty amounting to medical indifference. The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 104. "Deliberate indifference is a very high standard - a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). The plaintiff here has clearly not alleged or shown any conduct on the part of Nurse Betty which amounts to medical indifference.

The only allegations with regard to Nurse Betty are in the plaintiff's motion to add defendants. The plaintiff alleges that when he was confronted by Officers Tipton and Forrester about the Tylenol in his cell, the plaintiff told them to call Nurse Betty to confirm that she had given him the excess medicine. The plaintiff then alleges that Nurse Betty lied and told the officers that she had not given the plaintiff the medicine, resulting in the plaintiff

9

being "locked down" for two days. These allegations simply do not state a claim of constitutional proportion. Accordingly, as to Nurse Betty, summary judgment is appropriate.

***Qualified Immunity***

The defendants Tipton and Forrester argue that they are entitled to qualified immunity from suit in this case because their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.* Thus, in ruling on a defense of qualified immunity, a court must (1) identify the specific right allegedly violated; (2) determine whether at the time of the alleged violation the right was clearly established; and (3) if so, determine whether a reasonable person in the official's position would have known that his action would violate the right. *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 286, 290 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 426 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because

10

government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants Tipton and Forrester are entitled to qualified immunity on these claims.

## CONCLUSION AND RECOMMENDATION

Wherefore, it is recommended that the motion for summary judgment of defendants Forrester and Tipton be granted. It is further recommended that the motion to dismiss or for summary judgment of defendant Nurse Betty be granted.[4]

s/Bruce H. Hendricks
United States Magistrate Judge

January 4, 2006

Greenville, South Carolina

---

[4] The plaintiff's "Request for Action to Move Forward" filed May 2, 2005, docketed as a "Motion to Expedite" (doc. # 60), will be held in abeyance pending the district court's disposition of these motions for summary judgment. Should the district judge adopt this court's recommendation, the motions will be rendered moot.